United States District Court
Southern District of Texas
**ENTERED**
January 06, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| FERCAN E KALKAN, *et al.*, § | |
| § | |
| *Plaintiffs*, § | |
| VS. § | CIVIL ACTION NO. 4:24-cv-2548 |
| § | |
| FEDERAL NATIONAL MORTGAGE § | |
| ASSOCIATION (FANNIE MAE), *et al.*, § | |
| § | |
| *Defendants*. § | |
| § | |

### MEMORANDUM AND RECOMMENDATION ON MOTION FOR TEMPORARY RESTRAINING ORDER

Before this Court is Plaintiffs' Emergency Motion for Temporary Restraining Order and Application for Temporary Injunction.[1]  ECF 98.  After reviewing the pleadings, the applicable law, and hearing oral arguments, this Court RECOMMENDS that Plaintiffs' Motion for Temporary Restraining Order be DENIED.

**I.     Background**

The case centers on a multi-family unit property located at 2601 Lazy Hollow Drive, Houston, Texas 77063 (the "Property"). Plaintiffs Fercan E. Kalkan ("Kalkan") and Piney Point 2023 LLC ("Piney Point") currently own the Property,

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and the Cost and Delay Reduction Plan under the Civil Justice Reform Act. ECF 5.

and Fannie Mae holds a deed of trust on the Property securing a $73,893,00 loan. Fannie Mae, asserting multiple defaults under the loan agreement, served a Notice of Default and Demand for Cure on April 16, 2024 and a Notice of Acceleration on May 17, 2024.  ECF 19 ¶20; ECF 98 at 7; ECF 50-7; ECF 50-8.

On January 6, 2025, Piney Point instituted a bankruptcy proceeding. *In re Piney Point 2023 LLC*, Case No. 25-30128 (Bankr. S.D. Tex.).  ECF 47.  This case was stayed while the automatic stay applied to the Property.  ECF 48.  On August 8, 2025, the Bankruptcy Court entered a Stipulation and Order which gave Piney Point until November 15, 2025 to consummate a sale of the property which would generate sufficient proceeds to satisfy its obligations to Fannie Mae.  ECF 50-12 ¶¶ 1-2. The Bankruptcy Court's Order stated that if Piney Point failed to pay Fannie Mae in full by 11:59 p.m. on November 15, 2025, the automatic stay would terminate "thereby allowing Fannie Mae to exercise any and all of its rights and remedies under the Loan Documents as to the Property, including without limitation, foreclosure." *Id.* at ¶ 3.  The automatic stay terminated on November 15, 2025, allowing Fannie Mae to successfully move for: appointment of a Receiver for the Property; a TRO enjoining interference with the Receiver; and a subsequent Temporary Injunction. ECF 64; ECF 92.  The Court's Order Appointing Receiver precludes any person or entity from interfering with the Receivership Property, "except with respect to [among other things] Fannie Mae's right to foreclose its Deed of Trust on the

Receivership Property…" ECF 63 at 8. In addition, the Temporary Restraining Order entered by the Court noted that "foreclosure by Fannie Mae appears to be imminent." ECF 64 at 2. On December 15, 2025, Fannie Mae issued a Notice of Foreclosure, noticing a foreclosure sale of the Property for 10:00 a.m. on January 6, 2025. ECF 98 at 32-47.

Plaintiffs filed the current Motion for Temporary Restraining Order on Sunday, January 4, 2025—more than two months after the expiration of the automatic stay, the appointment of the Receiver and the entry of the TRO, and more than two weeks after Fannie Mae issued the December 15, 2025 Notice of Foreclosure. The Court conducted a hearing on the record at 8:00 a.m. on January 6, 2025. This Memorandum and Recommendation incorporates the reasons stated on the record at the hearing for the Court's recommendation that the TRO be denied.

## II.     Analysis

Plaintiffs have known that foreclosure was possible at least since Fannie Mae accelerated the debt in May 2024; have known that foreclosure was likely since the Bankruptcy Court lifted the automatic stay on November 15, 2025; and have known that foreclosure was imminent since Fannie Mae issued the December 15, 2025, Notice of Foreclosure. The Bankruptcy Court previously gave Plaintiffs until November 15, 2025 to close on a sale of the Property and pay the debt in full before lifting the automatic stay. ECF 50-12. Plaintiffs did not meet the deadline to pay

3

the debt and the automatic stay terminated at 11:59 p.m. on November 15, 2025. *Id.* In addition, this Court recognized that Fannie Mae intended to foreclose when it expressly excepted Fannie Mae's right to foreclose its Deed of Trust from the stay prohibiting all person and entities from taking any action against the property during the Receivership. ECF 63 at 8. Yet, Plaintiffs did not seek a TRO until two days before the scheduled foreclosure sale.

The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the court makes a final decision on injunctive relief. *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Loc. No. 70 of Alameda Cnty.*, 415 U.S. 423, 439 (1974). To obtain a TRO, an applicant must satisfy the following four elements: (1) substantial likelihood of success on the merits; (2) substantial threat of irreparable injury; (3) the threatened injury outweighs any harm the order might cause to the defendant; and (4) the injunction will not disserve the public interest. *Enrique Bernat F., S.A. v. Guadalajara, Inc.*, 210 F.3d 439, 442 (5th Cir. 2000). The decision of whether to grant or deny a TRO is within the Court's discretion. *Moore v. Brown*, 868 F.3d 398, 402 (5th Cir. 2017).

**A. Plaintiffs have not established a likelihood of success on the merits.**

First, Plaintiffs have not established a substantial likelihood of success on the merits. Plaintiffs have admitted default. ECF 101-1 at 4. As noted in this Court's prior Order Appointing Receiver, Fannie Mae has a right to foreclose on the Deed

4

of Trust. ECF 63 at 8 (staying actions against the Property "except with respect to Fannie Mae's right to foreclose its Deed of Trust on the Receivership Property"). Plaintiffs have not shown a likelihood of success on its alleged claim that it is not in default due to force majeure. As noted on the record at the hearing, force majeure events occurred only *after* the initial notice of default and acceleration which form the basis for the foreclosure action.

Plaintiffs have not demonstrated a prior material breach by Fannie Mae and in fact have not even asserted that claim or defense in this suit. *See* ECF 19 ¶ 35 (alleging that Fannie Mae breached the Loan Documents by "attempts to manufacture defaults," not by anything prior to Plaintiffs' default). Furthermore, Plaintiffs failed to present any evidence demonstrating that Fannie Mae wrongfully withheld escrowed funds in the repair account. The Court agrees that Plaintiffs' argument that Fannie Mae waived the right to foreclose by accepting payments ordered by the Bankruptcy Code is "nonsensical." ECF 101 at 9.

Plaintiffs' arguments at the hearing in support of the likelihood of success on the merits focused on Fannie Mae's failure to meet the technical requirements for a Notice of Foreclosure. However, these arguments go to Plaintiffs' likelihood of success on a potential future claim for wrongful foreclosure, a claim not currently before the Court. Further, the timing of the notice is disputed and although Plaintiffs bear the burden to prove the elements necessary for issuance of a TRO, they

5

presented no actual evidence tending to demonstrate when the notice was mailed or received.

### B.     Plaintiffs have failed to demonstrate irreparable injury.

Plaintiffs have not established a substantial threat of irreparable injury. Plaintiffs' counsel conceded at the hearing that if the foreclosure notice is deficient, any foreclosure would be void and Plaintiffs would have an adequate remedy at law. Further, the lack of sufficient notice does not demonstrate a threat of irreparable injury, because any notice deficiency could be cured by Fannie Mae sending a new foreclosure notice for future date.

Plaintiffs' claim of irreparable harm caused by potential eviction of any current tenants after foreclosure is not harm to Plaintiffs, but rather to those tenants. Plaintiffs also failed to present any non-speculative argument regarding potential eviction of current tenants.

Plaintiffs' argument that it will be irreparably harmed because foreclosure will cause it to "lose" a $25,000,000 insurance claim is unpersuasive. The insurance claim is for damage to the Property. The Loan Documents provide that in the event of foreclosure, Fannie Mae is the successor of any insurance claim. ECF 50-2 at 55.

Although real property is considered unique and its loss can represent irreparable harm, here Plaintiff signed the Loan Documents that provide Fannie Mae with a contractual right to foreclose. The exercise of a contractual right to foreclose

6

on real property based on Plaintiff's default on the loan does not pose an irreparable harm to Plaintiff. If foreclosure is wrongful, Plaintiff concedes it has an adequate remedy at law.

    **C.    The balance of the harms and the public interest factors weigh in favor of denying the TRO.**

The threatened injury to Fannie Mae from a TRO preventing foreclosure outweighs the injury to Plaintiffs. Plaintiffs have admitted default, which in turn entitles Fannie Mae to foreclosure. The state of the Property has been declining, and any continued decline in value harms Fannie Mae's interest in its collateral. Despite counsel's representation at the hearing that a Piney Point minority investor has made a last-minute offer to purchase the Property for $75,000,000, Piney Point presented no evidence of the offer or any other firm commitment to purchase from which Plaintiffs would be able to satisfy its debt to Fannie Mae.

Denial of the TRO precluding foreclosure does not disserve the public interest. As noted above, Plaintiffs retain any right they may have to pursue a wrongful foreclosure action. Further, it is in the public interest to protect the lender's right to recourse on a defaulted debt.

    **III.    Conclusion and Recommendation**

The Court finds based on its review of the Motion and Response, accompanying exhibits, the applicable law, and oral arguments, that Plaintiffs have not met their burden to demonstrate the four elements necessary to obtain a TRO.

The Court therefore RECOMMENDS that Plaintiffs' Motion for a Temporary Restraining Order (ECF 98) be DENIED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(C).  Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal.  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on January 06, 2026, at Houston, Texas.

                                          Christina A. Bryan
                                     United States Magistrate Judge